Thomas L. **BARBAGALLO**, individually
and on behalf of all other persons
similarly situated, Plaintiffs,

v.

**GENERAL MOTORS CORPORATION,**
Defendant.

Nos. 90 Civ. 5606 (MJL),
88 Civ. 1534 (MJL).

United States District Court,
S.D. New York.

March 22, 1993.

Leonard N. Flamm, New York City, for plaintiff.

Morrison & Foerster by Joseph G. Harraka, Jr., New York City, for defendant.

LOWE, District Judge.

Before this Court is the motion, dated February 14, 1991, of defendant General Motors Corporation ("GM"), for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the following reasons, GM's motion is granted.

### BACKGROUND

From September 1, 1986 to December 31, 1987, GM implemented a Special Separation Program ("the Program") in an effort to economize its labor expenditures. Details of the Program appear in an employee handbook entitled "Your GM Benefits: A Handbook for Salaried Employees in the United States," Krause Aff.Ex. B, and in internal memoranda. Krause Aff.Exs. A, D. Barbagallo does not dispute that these documents accurately represent the structure and operation of the Program. As a whole, the Program was intended to induce employees to separate from employment earlier than they otherwise would. The specific incentives applicable for a given employee depended on

the employee's age and length of service with GM. Four categories of employees were established. The categories and their corresponding separation incentives essentially are as follows. *See* Krause Aff.Ex. A at 2–4; Krause Aff.Ex. B at 36–46.

\* Age 60 to 70, with at least 10 years of service:

—No substantial change, just encouragement to increase usage of normal retirement program. [Krause Aff.Ex. A at 2].

—Lump-sum payment (bonus-eligible employees only). [Krause Aff.Ex. A at 3].

\* Age 55 to 60, with at least 10 years of service:

—Early retirement (designated "Special Retirement"). [Krause Aff.Ex. A at 3].

—No restriction on outside earnings. [Krause Aff.Ex. A at 2, 3].

—Lump-sum payment (bonus-eligible employees only). [Krause Aff.Ex. A at 3].

\* Age 53 to 55, with at least 10 years of service:

—Early retirement (designated "Special Leave" and to be re-designated "Special Retirement" at age 55). [Krause Aff.Ex. A at 2–3].

—No restriction on outside earnings. [Krause Aff.Ex. A at 3].

—Lump-sum payment (bonus-eligible employees only). [Krause Aff.Ex. A at 3].

\* Under age 53, or over age 53 with less than 10 years of service:

—Severance pay according to length of service. [Krause Aff.Ex. A at 3–4].

—Outplacement assistance. [Krause Aff. Ex. A at 8].

—Six months' continuation of basic life insurance and health care coverage (excluding CMEIP, dental and vision). [Krause Aff.Ex. A at 8].

—Voluntary early retirement benefits (subject to reduction for outside earnings) for those with at least 30 years of service. Deferred vested retirement benefits for those with at least 10 years of service. Part B retirement benefits for those with between 5 and 10 years of service. [Krause Aff.Ex. A at 4].

As GM personnel director R. James Krause explained,

[t]he Special Separation Program was, in part, a modification of General Motors's basic retirement program.... The Program offered to the first three categories of the above-referenced employees, for whom General Motors's normal retirement programs would apply, enhanced retirement and other benefits ...

... The Special Separation Program also was a modification of General Motors's regular Separation Program.... The [Special] Program offered to the fourth category of the above-referenced employees enhanced separation payments and other benefits.

Krause Aff. ¶¶ 11, 12.

The separation incentives were not generally available; rather, management selected the employees to whom the incentives would be offered. This was done to avoid early separation of highly valued employees and to avoid extra payments to those who already had "unsatisfactory performance evaluations" and who therefore might be fired anyway. Krause Aff. ¶ 9; Krause Aff.Ex. A at 6. Upon selection by management, an employee's decision whether to participate in the Program was voluntary.

Plaintiff Thomas L. Barbagallo ("Barbagallo") filed this class action in the Supreme Court of the State of New York, claiming that the Program's age classification scheme—particularly the restriction of severance pay provisions to employees under age 53—violated New York law against age discrimination. Complaint ¶¶ 8–11 (citing N.Y. Exec. Law §§ 296.1(a), 296.3–a(a) (McKinney 1982 & Supp.1993)). The action was removed to federal court pursuant to 28 U.S.C. § 1441.[1]

---

1. This action is related to an earlier action in which Barbagallo alleged that GM demoted him, in violation of federal and state laws against age discrimination, after he refused to accept GM's early retirement offer. *Barbagallo v. General Motors Corp.,* 88 Civ. 1534 (S.D.N.Y. filed March 7, 1988) (MJL). In the earlier action, Barbagallo sought to add a class action claim challenging the Program as violative of the federal Age Discrimination in Employment Act. 29 U.S.C.

GM filed the present motion for summary judgment, claiming that its Program—including the severance pay provisions—is covered by the federal Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1461, and that ERISA preempts application of New York's age discrimination law.

## DISCUSSION

■■■ A court may grant summary judgment only when it is clear that no genuine issue of material fact remains to be resolved at trial and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). All ambiguities must be resolved against the movant. *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1187 (2d Cir.1987) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962)). Summary judgment is granted "only where the entire record would inevitably lead a rational trier of fact to find for the moving party." *National R.R. Passenger Corp. v. City of New York*, 882 F.2d 710, 713 (2d Cir.1989). The party opposing a properly supported motion for summary judgment "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514; *see* Fed.R.Civ.P. 56(e).

The material facts set forth above are undisputed. The parties also agree that Barbagallo's claim under New York law will be preempted if the severance pay provisions are covered by ERISA. Pl's Mem. in Opp'n to Summ. J. at 5; Def's Mem. in Supp. of Summ. J. at 2. *See* 29 U.S.C. §§ 1144 (preempting all state laws that "relate to any employee benefit plan" as defined by ERISA); 29 U.S.C. § 623(f)(2) (exempting employee benefit plans from Age Discrimination in Employment Act); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983) (New York Human Rights Law preempted to extent it prohibits

§§ 621–34. That request was denied as barred by the statute of limitations. *Barbagallo v. General Motors Corp.*, 88 Civ. 1534, 1990 WL 100874

practices that are lawful under federal law); *Warren v. Oil, Chem. & Atomic Workers, Union–Industry Pension Fund*, 729 F.Supp. 563, 566–67 (E.D.Mich.1989) (ERISA preempts state law discrimination claims brought beyond limitations period of federal discrimination law).

The parties differ only as to whether the severance pay provisions are covered by ERISA. GM contends that the severance pay provisions are governed by ERISA both separately and as part of the overall program. It cites precedents holding that severance pay falls within ERISA, such as *Gilbert v. Burlington Indus., Inc.*, 765 F.2d 320 (2d Cir.1985), *aff'd mem.*, 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 558 (1986):

> Although severance pay is often a reward for past service, it also serves the same purpose as unemployment benefits. When ties that bind an employee to his or her company are severed by the employer, unemployment for the employee—whether fleeting or permanent—is an inexorable consequence. Thus, in our view severance pay is an unemployment benefit and an unfunded severance pay policy constitutes an "employee welfare benefit plan" under § 1002(1)(A).

> We also conclude that an unfunded severance pay policy is an "employee welfare benefit plan" under § 1002(1)(b).

*Id.* at 325 (citations omitted). *See also Massachusetts v. Morash*, 490 U.S. 107, 116, 109 S.Ct. 1668, 1673, 104 L.Ed.2d 98 (1989) (severance benefit plans are employee welfare benefit plans under ERISA); *Reichelt v. Emhart Corp.*, 921 F.2d 425, 430 (2d Cir. 1990) ("An unfunded severance plan is an 'employee welfare benefit plan' under § 1002(1)."), *cert. denied*, —— U.S. ——, 111 S.Ct. 2854, 115 L.Ed.2d 1022 (1991).

Barbagallo argues that the severance pay provisions are separate from the overall Program and not subject to ERISA. Barbagallo's argument finds support in precedents that found against preemption where certain benefits were separable from others that fell within ERISA. Thus, the Supreme Court in

(S.D.N.Y. July 9, 1990) (MJL). Barbagallo now seeks the same relief by way of state law, which carries a longer statute of limitations.

*Massachusetts v. Morash,* 490 U.S. 107, 109 S.Ct. 1668, 104 L.Ed.2d 98 (1989), decided that accrued vacation pay was not governed by ERISA. And in *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987), the Court found that a state law mandating one-time severance payments in the event of a plant closing was not a "plan" and therefore not preempted by ERISA.

*Gilbert* might appear to exist in tension with *Fort Halifax,* because one decision finds a severance pay program to be covered by ERISA and the other finds a severance pay program not covered by ERISA. Factual differences, however, supply a basis for reconciling the decisions. Principally, *Gilbert* concerned an ongoing severance pay plan for dealing with individual employee terminations, 765 F.2d at 323, while *Fort Halifax* concerned a one-time payment triggered by the closing or relocation of a plant having 100 or more employees. 482 U.S. at 4 n. 1, 107 S.Ct. at 2213 n. 1. The question in this case is whether GM's Special Separation Program, and in particular the Program's severance pay provisions, should be grouped with the ongoing plan in *Gilbert* or instead with the one-time payment in *Fort Halifax.*

This Court concludes that the GM severance pay provisions are at least as properly covered by ERISA as the severance plan in *Gilbert* was. Two lines of reasoning separately support this conclusion. First, the Court finds that the severance pay provisions, considered in isolation, are not so limited in scope and duration as to fall outside ERISA. Although the duration of the program in *Gilbert* was indefinite, whereas here it was for sixteen months, that distinction is insufficient to require a difference in result. Second, the Court finds that the severance pay provisions should be treated as part of the overall Special Separation Program, and as such, are unquestionably governed by ERISA.

### A. Severance Pay in Isolation

 Barbagallo argues that the GM severance pay provisions are separable from the rest of the Program, and that the provisions thus isolated fall outside ERISA. This argument is understandable, because the primary

purpose of ERISA is to define both the rights of employees who pay into a fund over a long period of time and the duties of employers who administer that fund. *See Massachusetts v. Morash,* 490 U.S. 107, 112, 109 S.Ct. 1668, 1671, 104 L.Ed.2d 98 (1989) ("ERISA was passed by Congress in 1974 to safeguard employees from the abuse and mismanagement of funds that had been accumulated to finance various types of employee benefits."). *Fort Halifax* as well confirms that there is a limit to the reach of ERISA.

Yet *Gilbert* shows that ERISA has been interpreted broadly to cover many arrangements beyond formal funds. And the majority opinion in *Fort Halifax* reaffirmed *Gilbert*'s correctness:

> Appellant also argues that its contention that the severance obligation under the Maine statute is an ERISA plan is supported by [*Gilbert*]. We disagree. [*Gilbert* holds] that a plan that pays severance benefits out of general assets is an ERISA plan. That holding is completely consistent with our analysis above. There was no question in [*Gilbert*], as there is in this case, whether the employer had a "plan"; there was a plan and the only issue was whether the type of benefits paid by that plan are among those covered by ERISA.

482 U.S. at 17–18, 107 S.Ct. at 2220–21 (citations and footnote omitted). The specific facts of *Gilbert,* as recounted by the *Fort Halifax* majority, are telling for purposes of the present case:

> The employer had made a commitment to pay severance benefits to employees as each person left employment. This commitment created the need for an administrative scheme to pay these benefits on an ongoing basis, and the company had distributed both a Policy Manual and Employees' Handbook that provided details on matters such as eligibility, benefit levels, and payment schedules.

482 U.S. at 18 n. 10, 107 S.Ct. at 2221 n. 10 (citations omitted). GM, too, made a commitment to pay severance benefits to each employee separating under the Program, and created an administrative scheme to do so, evidenced by an employee handbook and in-

ternal memos detailing eligibility, benefit levels, and payment schedules. Krause Aff.Exs. A, B, D.

The sixteen-month duration of GM's Program does not remove the severance pay provisions from ERISA coverage. GM aptly cites numerous cases in which programs of much shorter duration than this were held subject to ERISA. *See Dytrt v. Mountain State Tel. & Tel. Co.*, 921 F.2d 889, 891–92 (9th Cir.1990) (approximately two month window of operation); *Cochran v. AT & T Technologies, Inc.*, 753 F.Supp. 284, 286 (E.D.Mo. 1991) (two week window of operation); *Ogden v. Michigan Bell Tel. Co*, 657 F.Supp. 328, 331, 332 n. 3 (E.D.Mich.1987) (two one-month windows of operation), *rev'd on other grounds sub nom. Berlin v. Michigan Bell Tel. Co.*, 858 F.2d 1154 (6th Cir.1988). This Court is satisfied that GM's severance pay provisions, standing in isolation, constitute an employee welfare benefit plan under ERISA.

B. Severance Pay as Part of the Program

■ Courts have recognized the legitimacy of using severance pay as one component of a broader plan for inducing separation. *See, e.g., Dytrt*, 921 F.2d at 891 (severance pay, supplemental benefits, and early retirement); *Cochran*, 753 F.Supp. at 285–86 (choice between transfer or lump sum severance pay); *Ogden*, 657 F.Supp. at 331 (severance pay, supplemental benefits, and early retirement). GM's severance pay provisions similarly are part of a broader plan for inducing separation.

Barbagallo argues that GM's Program is distinguishable from the plans in the cited cases, because those plans did not segregate severance pay from retirement benefits on the basis of age. GM's Program, of course, does segregate benefits on the basis of age. That fact, however, is unavailing. For one thing, as the preceding section of this opinion explained, the severance provisions would be covered by ERISA even if they were wholly independent.

Moreover, this Court disagrees with Barbagallo's premise that the severance pay provisions are separable from the rest of the Program. The severance provisions are not independent of the Program, but are an inte-

gral part of it. Labor cost reductions are gained by the Program in exchange for incentives given. Those incentives are fashioned according to GM's expectations about what it must give in order to gain the desired effect. Incentives are keyed to perceived differences in the circumstances of different age groups of employees. The incentives differ in specifics, but all "serve the same purpose as unemployment benefits," *Gilbert*, 765 F.2d at 325—namely, to lighten the burden of job loss, whether that loss be the product of a unilateral decision as in *Gilbert* or of a mutual decision as in the present case.

If there is any legal significance to the age-based segregation of incentives, it is because of the federal Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–34, not because of ERISA. This Court expresses no opinion on whether GM's Program comports with the ADEA. *See generally* 29 U.S.C. § 623(f)(2) (benefit plans exempted from ADEA as long as they are not subterfuges to evade ADEA's purposes); *Public Employees Retirement System v. Betts*, 492 U.S. 158, 109 S.Ct. 2854, 106 L.Ed.2d 134 (1989) (interpreting § 623(f)(2) "subterfuges"). It is sufficient for purposes of preemption analysis that the federal legislative scheme—ERISA and the ADEA—*would* be applicable in a properly brought federal action, and that Barbagallo failed properly to bring a federal action within the requisite period of limitation. *Warren*, 729 F.Supp. at 566–67.

Barbagallo cites *Amato v. Western Union Int'l, Inc.*, 773 F.2d 1402, 1426–27 (2d Cir. 1985), *cert. dismissed*, 474 U.S. 1113, 106 S.Ct. 1167, 89 L.Ed.2d 288 (1986), and argues that "not all employer actions ... relating loosely to an employee's 'benefits,' merely because they are labelled by the employer as being furnished pursuant to a 'plan,' are in fact 'plans' themselves or part of an [sic] 'employee benefit plans' subject to or covered by ERISA." Pl's Mem. in Opp'n to Summ. J. at 10. The *Amato* opinion is not as long as Barbagallo's pinpoint citation suggests, but an educated guess is that Barbagallo means to refer to the Court's discussion of several precedents holding that unfunded or separate plans might not involve "accrued bene-

fits" within the meaning of ERISA. *Amato,* 773 F.2d at 1413–14. Weighed against the other decisions cited in this opinion, *Amato* fails to establish the inapplicability of ERISA to the unfunded severance pay portion of a separation incentive program that also includes enhanced early retirement benefits. If an unfunded severance pay program falls within ERISA when unaccompanied by early retirement provisions, as in *Gilbert,* then surely it falls within ERISA when associated with such provisions, as in the present case.

This Court finds that a separation incentive plan such as GM's Special Separation Program, fusing both early retirement benefits and severance benefits in a formal structure, is covered by ERISA both as a whole and as to its component parts. GM's severance pay provisions are an integral part of its overall plan to provide for employee welfare while reducing the number of employees—a plan that is unquestionably governed by ERISA. *See Martin v. General Motors Corp.,* No. 89 Civ. 3193 (E.D. Mich. Mar. 19, 1990). The severance pay provisions are governed by ERISA as part of that plan. Consequently, Barbagallo's state law age discrimination claim is preempted by the federal legislative scheme consisting of ERISA and the ADEA.

## CONCLUSION

Barbagallo's state law age discrimination claim is preempted by ERISA and the ADEA. GM's motion for summary judgment is hereby granted.

It Is So Ordered.