**Barrington J. FLUDGATE, Plaintiff,**

v.

**MANAGEMENT TECHNOLOGIES, INC., Winter Partners, Inc., Keith Williams, Defendants.**

No. 94 Civ. 6839 (PKL).

United States District Court, S.D. New York.

May 18, 1995.

Davidoff & Malito LLP, New York City (Jack E. Bronston, John Harris, of counsel), for plaintiff.

Baratta & Goldstein, New York City (Howard Goldstein, Joseph Baratta, of counsel), for defendant.

LEISURE, District Judge:

This is an action brought by Barrington J. Fludgate ("Fludgate") against Management Technologies, Inc. ("MTI"), Winter Partners, Inc. ("WP") and Keith Williams ("Williams"), seeking recovery for claims under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 et seq., claims under New York labor law, and claims for wrongful interference with Fludgate's employment agreement with MTI (the "Employment Agreement"). Defendants move for an order dismissing the complaint for lack of subject matter jurisdiction and for summary judgment as to the claims against Williams and WP for wrongful interference. Plaintiff, in turn, moves to amend his complaint and for an extension of the time within which to serve Williams. For the reasons stated below, defendants' motion is granted, and plaintiff's motion is granted.

**1.** Winter Holding was the parent company of WP, a New York subsidiary.

**2.** The Court preliminarily notes that the genuine motivation for Fludgate's resignation is a question of fact inappropriate for this Court to re-

## BACKGROUND

Fludgate was the founder and principal shareholder of MTI, a publicly owned company, and he acted as its chairman and chief executive officer until 1994. *See* Defendants' Memorandum of Law in Support of their Motion to Dismiss ("Defendant Mem.") at 1. In April 1992, Fludgate drafted the Employment Agreement, which now serves as the basis for his ERISA claims. *Id.* at 2. Also in 1992, MTI purchased four operating companies from Winter Partners Holding A.G. ("Winter Holding").[1] *Id.* Williams was the general manager of Winter Holding, and upon the acquisition of the Winter Holding subsidiary companies by MTI, became the chief operating officer of MTI. *Id.*

Fludgate alleges that Williams told the board of directors of MTI that Winter Holding would not proceed with the sale if plaintiff remained as chief executive officer of MTI. Defendants maintain that plaintiff voluntarily resigned from MTI as its chairman and chief executive officer. Plaintiff contends that his resignation was involuntary.[2] Fludgate retained his position as a director of MTI for three months after his resignation as chief operating officer, but on September 15, 1994, plaintiff resigned from the Board of MTI as well. Soon thereafter, plaintiff commenced the instant action.

## DISCUSSION

### A. *Standard for Motion to Dismiss*

In reviewing a motion to dismiss, a court must assume the facts alleged by the plaintiff to be true and must liberally construe them in the light most favorable to the plaintiff. *Easton v. Sundram*, 947 F.2d 1011, 1014 (2d Cir.1991), *cert. denied*, 504 U.S. 911, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992). Therefore, the court should not dismiss the complaint " 'unless it appears beyond doubt that the plaintiff can prove no set of facts in

solve on a motion for summary judgment. Consequently, for purposes of the instant motion, this Court must assume as true that Fludgate's abdication was unwilling.

support of his claim which would entitle him to relief.'" *Ricciuti v. N.Y.C. Transit Authority,* 941 F.2d 119, 123 (2d Cir.1991) (*quoting Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957)). For example, "the court's task on a Rule 12(b)(6) motion is not to rule on the merits of plaintiffs' claims, but to decide whether, presuming all factual allegations of the complaint to be true, and drawing all reasonable inferences in the plaintiff's favor, the plaintiff could prove any set of facts which would entitle him to relief." *Weiss v. Wittcoff,* 966 F.2d 109, 112 (2d Cir.1992) (citations omitted).

## B. *ERISA Claims*

■■■ Defendants move to dismiss the instant action for lack of subject matter jurisdiction, alleging that ERISA is not implicated.[3] "ERISA was passed by Congress in 1974 to safeguard employees from the abuse and mismanagement of funds that had been accumulated to finance various types of employee benefits." *James v. Fleet/Norstar Financial Group, Inc.,* 992 F.2d 463, 465 (2d Cir.1993) (citations omitted). "To that end, it established extensive reporting, disclosure, and fiduciary duty requirements to insure against the possibility that the employee's expectation of the benefit would be defeated through poor management by the plan administrator." *Id.*[4]

ERISA governs employee benefit plans, which encompasses employee welfare benefit plans and employee pension benefit plans. *See* 29 U.S.C. § 1002(3); *Fleet,* 992 F.2d at 465. An employee welfare benefit plan is defined as

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in … [§ 186(c) ] [which includes "severance or similar benefits"] (other than pensions on retirement or death, and insurance to provide such pensions).

29 U.S.C. § 1002(1).[5] Consequently, to establish federal jurisdiction under ERISA, Fludgate must allege facts that show the establishment of a "plan, fund, or program" of the type covered by ERISA. *See Donovan v. Dillingham,* 688 F.2d 1367, 1369–70 (11th Cir.1982).

The question before this Court is whether MTI's arrangement with Fludgate constituted an employee welfare benefit plan under ERISA.

> Congress intended pre-emption to afford employers the advantages of a uniform set of administrative procedures governed by a single set of regulations. This concern only arises, however, with respect to benefits whose provision by nature requires an ongoing administrative program to meet the employer's obligation. It is for this reason that Congress pre-empted state laws relating to *plans,* rather than simply to *benefits.* Only a plan embodies a set of administrative practices vulnerable to the

---

**3.** In instances where federal subject matter jurisdiction is based on ERISA, but the evidence fails to establish the existence of an ERISA plan, the claim must be dismissed for lack of subject matter jurisdiction. *See Harris v. Arkansas Book Co.,* 794 F.2d 358, 360 (8th Cir.1986). In the instant action, Fludgate predicates federal court jurisdiction on his contention that his ERISA claim presents a federal question. *See* 28 U.S.C. § 1331; 29 U.S.C. § 1132(e)(1).

**4.** "[T]he primary purpose of ERISA is to define both the rights of employees who pay into a fund over a long period of time and the duties of employers who administer that fund." *Barbagallo v. General Motors Corp.,* 818 F.Supp. 572, 576 (S.D.N.Y.1993).

**5.** ERISA also contains a broad preemption provision which states that its regulatory provisions "supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title." 29 U.S.C. § 1144(a).

burden that would be imposed by a patchwork scheme of regulation.

*Fleet,* 992 F.2d at 466 (quoting *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987)) (emphasis in original); *see also Kulinski v. Medtronic Bio-Medicus,* 21 F.3d 254, 257 (8th Cir.1994) ("to determine whether a benefits plan falls within ERISA's ambit; the pivotal inquiry is whether the plan requires the establishment of a separate, ongoing administrative scheme to administer the plan's benefits.") (citations omitted).[6]

Plaintiff notes that the Employment Agreement provides that upon an acquisition, consolidation, or change in control of MTI, Fludgate may terminate the Employment Agreement, but his hospitalization, health and dental care, life insurance and similar benefits continue. Fludgate observes that the Employment Agreement guaranties that, in addition to the benefits provided under any pension benefit plan, he will receive the pension benefits he would have accrued under such pension benefit plan if he had remained in the employ of MTI for twenty-four calendar months after his termination. In addition, Fludgate is to receive incentive compensation, stock options, and executive benefits for twenty-four calendar months after his termination.

Fludgate contends that the Employment Agreement requires an ongoing administrative scheme and that, as a result, such benefits are ERISA welfare benefits. In support of his argument, he notes that some of the benefits to which he is entitled cannot be determined for up to twenty-four months after his termination.[7]

■ This Court finds, however, that in the instant action, there was no need for the creation of an administrative program to meet MTI's alleged obligation. Plaintiff's causes of action are appropriately viewed as an attempt to claim damages for the purported breach of Fludgate's Employment Agreement, but the Employment Agreement does not create an ERISA plan.[8] ERISA was designed only to preempt state laws which relate to benefit plans, not laws which relate to employee benefits. *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 11, 107 S.Ct. 2211, 2217, 96 L.Ed.2d 1 (1987). Plaintiff cannot show that MTI had a formal plan in existence, nor that a defined group had been designated as beneficiaries or participants, nor that an administrative scheme was in place.

■ The fact that severance benefits may have been provided, or that a decision to extend various other benefits was made, is not sufficient to show establishment of a plan. *See Donovan,* 688 F.2d at 1367.[9] The characterization of severance payments as governed by ERISA has hinged on the amount of employer discretion involved in providing payment. *See Fleet,* 992 F.2d at 468. In the instant case, while payment could continue for as long as two years, there does not appear to be anything discretionary about the timing, form, or amount of payments. *See Delaye v. Agripac, Inc.,* 39 F.3d 235, 237 (9th Cir.1994). In addition, plaintiff does not allege that MTI ever published or

---

**6.** Simple or mechanical determinations do not necessarily require the establishment of such an administrative scheme; rather, an employer's need to create an administrative system may arise where the employer, to determine the employees' eligibility for and level of benefits, must analyze each employee's particular circumstances in light of the appropriate criteria.
*Kulinski,* 21 F.3d at 256–57.

**7.** This would be true, for example, for new benefits provided by MTI to its employees to which Fludgate is entitled.

**8.** Specifically, the Employment Agreement contains, *inter alia,* provisions relating to severance; arrangements for the continuation of benefits for Fludgate, including health and life insurance and death benefit, if Fludgate's employment should terminate because of consolidation or change in control of MTI; and agreement as to the extension of Fludgate's monthly pay until July 31, 1995.

**9.** The Court notes that although an unfunded severance pay policy can be an employee welfare benefit plan under 29 U.S.C. § 1002(1)(A), *see Barbagallo v. General Motors Corp.,* 818 F.Supp. 572, 575 (S.D.N.Y.1993), such a policy is not what is at issue in the instant action. There is no ERISA plan, in this case, because the execution of Fludgate's individual benefits under his Employment Agreement does not require the institution of a supervisory administrative program.

distributed a severance policy to officers or employees, that employees, other than plaintiff, were aware of the severance practice, that there was a particular employee group covered by the policy, or that there was a specific method of financing or calculating benefits.[10]

The facts of this case are similar to the circumstances that existed in *Delaye*. In *Delaye*, the plaintiff, the former president and chief executive officer of the defendant, entered into an employment contract with the defendant. The contract provided that if the plaintiff was terminated without cause, he would receive (1) his salary for up to an additional twenty-four months, according to a set formula; (2) accrued vacation benefits; and (3) the same accident, health, life, and disability insurance he had during the term of employment, until he found other employment or the defendant ceased monthly payments to him. *Delaye*, 39 F.3d at 236. Plaintiff was then terminated.[11] The Ninth Circuit, while not deciding whether a one-person employment contract could be an ERISA plan, determined that the plaintiff's contract did not involve an ongoing administrative scheme and so was not a "plan" under ERISA. *Id.* at 237.[12]

In the instant action, as in *Delaye*, plaintiff has failed to allege the parameters necessary for the establishment of a welfare benefit plan. There does not exist a regulatory scheme, a defined group, or plan participants. In addition, the administration of the benefits enumerated in Fludgate's Employment Agreement does not require the establishment of a separate, ongoing administrative scheme. It was not the intent of ERISA to protect employment agreements of the type in dispute in the instant action.[13] This Court concludes that any obligations MTI may have with respect to Fludgate are contractual in nature, are governed by the terms of the Employment Agreement and do not implicate ERISA. Accordingly, this Court lacks subject matter jurisdiction.

## C. *Claims Against Williams and WP* [14]

Defendants next contend that plaintiff fails adequately to allege claims against WP and Williams.[15] This Court notes that it is undisputed that Williams wrote a letter on WP stationery, and this letter is alleged to have urged the dismissal of Fludgate. This Court finds that the letter can be viewed as inducing MTI to breach its Employment Agreement with Fludgate.[16] Fludgate both dis-

---

**10.** The Court also notes that MTI's purchase of Fludgate's life insurance policy, pursuant to the Employment Agreement, is properly viewed as the purchase of an individual policy not requiring the establishment of an ongoing administrative program. Rather than necessitating the creation of a regulatory regime, MTI's involvement was no more complicated than the purchase of the policy. MTI did not own, control, administer or assume responsibility for the benefits derived from the policy. *See Taggart Corp. v. Life Health Ben. Administration, Inc.*, 617 F.2d 1208, 1211 (5th Cir.1980).

**11.** The parties disputed whether or not the termination was for cause.

**12.** "Sending [plaintiff], a single employee, a check every month plus continuing to pay his insurance premiums for the time specified in the employment contract does not rise to the level of an ongoing administrative scheme." *Delaye*, 39 F.3d at 237. "[A]rithmetical calculations and clerical determination[s] do not require [an] ongoing, particularized, administrative discretionary analysis." *Id.* at 238.

**13.** "Congress enacted ERISA to protect working men and women from abuses in the administra-

tion and investment of private retirement plans and employee welfare plans." *Donovan*, 688 F.2d at 1370.

**14.** As a preliminary matter, in his cross-motion, Fludgate seeks an extension of time within which to serve Williams. Since filing his cross-motion, however, plaintiff has served Williams, and this Court considers such service to be adequate.

**15.** Plaintiff alleges that, pursuant to the Employment Agreement, MTI could not terminate Fludgate, except for cause, and that WP and Williams, without cause, demanded and caused MTI to force Fludgate to resign. Plaintiff asserts that such actions constitute tortious interference with contractual relations.

**16.** The Court once again notes that, on the instant motion, it is required to view the facts alleged in the light most favorable to the non-movant and to make all reasonable inferences in favor of the non-movant. Consequently, Williams' letter can be viewed as requiring the termination of Fludgate as a condition for the sale of the four operating companies by WP Holding.

putes plaintiff's characterization of the letter and offers an explanation for Williams' use of WP's letterhead,[17] but such assertions merely create material questions of fact. Consequently, triable issues of fact exist, and defendants' motion for summary judgment of Fludgate's tort claims against WP and Williams must be denied.

■ Defendants also move to dismiss Fludgate's claims against Williams and WP for lack of subject matter jurisdiction. Plaintiff contends that the claims against WP and Williams and those against MTI are intertwined. He asserts that they all arise from the purported wrongful termination of Fludgate and the denial of his benefits under the Employment Agreement.

■ The Court notes that supplemental jurisdiction exists where federal and state claims derive from a common nucleus of operative facts such that a plaintiff would ordinarily expect to try them all in one judicial proceeding. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966).[18] This Court, however, having dismissed plaintiff's ERISA claims, declines to exercise supplemental jurisdiction over any of the claims for which it did not have original jurisdiction. *See Purgess v. Sharrock,* 33 F.3d 134, 138 (2d Cir.1994) ("district courts may decline to exercise supplemental jurisdiction over a claim . . . [if] the district court has dismissed all claims over which it has original jurisdiction.").[19] Accordingly, defendants' motion to dismiss Fludgate's claims against WP and Williams for lack of subject matter jurisdiction should be granted.

17. Defendants claim that Williams wrote the letter on the WP letterhead because no other stationery was available.

18. [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties. 28 U.S.C. § 1367.

### D. *Motion to Amend*

■ Federal Rule of Civil Procedure 15 permits a party to amend a pleading by leave of the court, and directs that "leave shall be freely granted when justice so requires."

The Second Circuit has interpreted Rule 15 to permit denial of a motion to amend "only for such reasons as 'undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party.'" *Richardson Greenshields Sec., Inc. v. Lau,* 825 F.2d 647, 653 n. 6 (2d Cir 1987) (quoting *State Teachers Retirement Bd v. Fluor Corp.,* 654 F.2d 843, 856 (2d Cir 1981)); *Tokio Marine and Fire Ins. Co. v. Employers Ins. of Wausau,* 786 F.2d 101, 103 (2d Cir.1986). "[A] court should deny leave to amend a pleading on grounds of futility only when the proposed amendment is clearly frivolous or advances a claim that is legally insufficient on its face." *Cashman v. Montefiore Medical Center,* 1993 WL 227700, 2 (S.D.N.Y.) (PKL).

*Preferred Physicians Mutual Risk Retention Group v. Cuomo,* 865 F.Supp. 1057, 1069 (S.D.N.Y.1994) (Leisure, J.).

In the instant action, plaintiff seeks to amend his complaint to include violations of the Securities Exchange Act of 1934. Specifically, Fludgate contends that defendants took actions to fix or stabilize the price of a security in contravention of the rules promulgated by the Securities Exchange Commission.[20] Defendants oppose the amendment of the complaint solely on the grounds that plaintiff's proposed amendment is brought in bad faith.

This Court finds that the circumstance of this case are insufficiently extreme to war-

19. "[T]he exercise of supplemental jurisdiction is left to the discretion of the district court, and this court's review is limited to whether the district court abused its discretion." *Purgess,* 33 F.3d at 138.

20. In particular, Fludgate maintains that defendants wrongfully barred him from selling his shares of MTI stock for a period of time, in order to maintain the market price of the stock.

rant denying plaintiff leave to amend his complaint for acting in bad faith. In addition, defendants have failed to demonstrate, or even allege, that they will be prejudiced to such an extent that the Court should deny plaintiff leave to amend his complaint. Accordingly, Fludgate's motion for leave to amend should be granted.

### CONCLUSION

For the reasons stated above, defendants' motion to dismiss plaintiff's ERISA claims is granted. In addition, this Court declines to exercise supplemental jurisdiction over plaintiff's state law claims in light of the dismissal of the ERISA causes of action, and therefore, all other claims are dismissed for lack of subject matter jurisdiction. However, plaintiff is granted leave to amend its complaint.

**SO ORDERED.**