**Richard M. BLAIR, Plaintiff,**

v.

**YOUNG PHILLIPS CORPORATION; and Graphic Systems, Inc., Defendants.**

**No. CIV.A.1:00CV01130.**

United States District Court, M.D. North Carolina.

May 31, 2001.

---

J. Griffin Morgan, Elliot Pishko Gelbin & Morgan, P.A., Robert M. Elliot, Elliot Pishko Gelbin & Morgan, P.A., Winston–Salem, for Richard M. Blair, plaintiffs.

Daniel R. Taylor, Jr., Kilpatrick Stockton, L.L.P., Louis Whittier Doherty, Kilpatrick Stockton, L.L.P., Winston–Salem, for Young Phillips Corporation, Graphic Systems, Inc., Young Phillips Employment Agreement, the, defendants.

### MEMORANDUM OPINION

BULLOCK, District Judge.

This matter is before the court on a motion to remand by Plaintiff Richard M. Blair ("Plaintiff"). Plaintiff filed this action on October 3, 2000, in Forsyth County Superior Court seeking to recover severance and other post-termination employment benefits from his former employers, Young Phillips Corporation ("Young Phillips") and Graphic Systems, Inc. ("GSI"),

(collectively "Defendants"). Defendants filed notice of removal on November 9, 2000. In their notice of removal, Defendants argue that Plaintiff's claims are preempted by the Employment Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* ("ERISA"). Plaintiff disagrees and has moved to remand the case. Plaintiff has also requested the court to grant attorney's fees based on improper removal. For the following reasons, the motion to remand and the request for attorney's fees will be denied.

## BACKGROUND

Young Phillips hired Plaintiff as executive vice president and chief operating officer ("COO") on October 31, 1988. Young Phillips is a North Carolina corporation. Its principal business is distribution of photographic and graphic arts equipment, supplies, and services. In 1991, Plaintiff was promoted from vice president to president. In 1998, Plaintiff was named vice chairman of the Young Phillips board of directors. After assuming the position of vice chairman of the board of directors, Plaintiff still maintained his positions as president and COO.

Plaintiff entered into a series of employment contracts with Young Phillips during his tenure with the company. These contracts contained relatively consistent terms. They differed most notably in salary, which increased with each of Plaintiff's promotions. On May 7, 1998, Plaintiff entered into his final Employment Agreement ("Agreement") with Young Phillips. Among its provisions, the Agreement provided for a two-year term of employment and for severance compensation in the event of termination without cause. The Agreement also contained a non-compete clause. With regard to the two-year term of employment, the Agreement provided that Plaintiff would serve as COO for "a continuing term of two years which is automatically extended on a daily basis so that the term remains a full two years at all times." (Pl.'s Br. in Support of Mot. to Remand, Ex. 1 at 1). The Agreement further stated that this continually renewing two-year term of employment would "not be extended automatically beyond July 31, 2004." (*Id.*) As to the severance provision contained in the Agreement, Young Phillips maintained the right to terminate Plaintiff "for cause" at any time. If Plaintiff was terminated "for cause," he would have no right to receive any compensation or benefits following his termination. The term "for cause" was defined by the Agreement to include:

> [C]hronic alcoholism, drug addiction, criminal dishonesty, misappropriation of any money or other assets or properties of [Young Phillips], bankruptcy of [Plaintiff], willful violation of specific and lawful directions of the Board of Directors of [Young Phillips] or their designees (which directions must not be inconsistent with the provisions of this Agreement), failure or refusal to perform the services required of [Plaintiff] under this Agreement and any other acts or omissions that constitute grounds for cause under the laws of the State of North Carolina.

(Pl.'s Br. in Support of Mot. to Remand, Ex. 1 at 3). The Agreement also contained a provision entitled "Voluntary Termination." Under this provision, the Agreement could "be terminated by either party ... upon 30 days written notice to the other party." (*Id.*) However, if Young Phillips terminated the Agreement for any reason other than Plaintiff's death, disability, or "for cause," Plaintiff would receive sixty percent (60%) of his salary as well as other fringe benefits listed in the Agreement for twenty-four months or until July

31, 2004, whichever came first.[1] Finally, under the Agreement, Plaintiff entered a covenant not to compete with Young Phillips for two years following his term of employment. The Agreement provided for specific performance of the non-compete covenant and also provided that Plaintiff would repay Young Phillips any profits he received in violation of the covenant. The same day they entered into the Agreement, Plaintiff and Young Phillips also executed an Incentive Compensation Plan, which provided for bonus payments based on Plaintiff's performance as COO of Young Phillips.

On July 31, 1999, GSI acquired all or most of the stock of Young Phillips. Shortly following this acquisition, on August 5, 1999, Plaintiff and GSI entered into an Addendum Agreement of Employment ("Addendum"). Under the Addendum, GSI agreed to be bound by the same terms as the Agreement between Plaintiff and Young Phillips. The Addendum also terminated the Incentive Compensation Plan Plaintiff had entered with Young Phillips, but provided that Plaintiff and GSI would negotiate "an alternative incentive compensation plan mutually acceptable to the parties." (Pl.'s Br. in Support of Mot. to Remand Ex. 3). No bonus compensation was ever paid under the original Incentive Compensation Plan, and contrary to the provision in the Addendum no alternative plan was ever executed.

On August 23, 2000, GSI terminated Plaintiff. GSI determined that the termination was "for cause," and refused to provide Plaintiff with any of the severance benefits specified in the "Voluntary Termination" section of the Agreement. Plaintiff filed suit in Forsyth County Superior Court on October 3, 2000, claiming that his termination was not "for cause" and that he was eligible for severance benefits. Plaintiff asserted five causes of action in his complaint: (1) breach of contract; (2) violation of the North Carolina Wage and Hour Act; (3) interference of contract against GSI; (4) breach of good faith under the Contract; and (5) breach of contract to provide bonus compensation. On November 9, 2000, Defendants filed a notice of removal claiming that Plaintiff's action was preempted by ERISA. Plaintiff subsequently filed this motion to remand. In the motion to remand, Plaintiff has requested attorney's fees based on Defendants' "unjustified removal." (Pl.'s Reply in Support of Mot. to Remand at 8).

## ANALYSIS

■ ERISA regulates certain aspects of the employer-employee relationship. It also provides an extensive area of federal subject matter jurisdiction. ERISA's preemption provision states that the statute "shall supersede any and all State laws insofar as they may now or hereafter re-

---

1. In its entirety, the "Voluntary Termination" section of the Agreement provides:

   This Agreement may be terminated by either party hereto upon 30 days written notice to the other party. If this Agreement is terminated by the Company other than [due to death, disability or "for cause"], the Executive shall receive sixty percent (60%) of the salary paid on a monthly basis and the Fringe Benefits listed under Paragraph 1 of Schedule 3.2 for the twenty four (24) month Term or until July 31, 2004, whichever constitutes the shorter time period. If this

   Agreement is terminated by the Executive pursuant to this Section 4.4, the Executive shall receive the Fees, Fringe Benefits and Expense Reimbursements payable through the date of such termination only.
   (Pl.'s Br. in Support of Mot. to Remand, Ex. 1 at 3). The "Fringe Benefits listed under Paragraph 1 of Schedule 3.2" included: "Health, life, disability, vacation, time off, and retirement coverage consistent with that currently offered to employees or [sic] equivalent position." (Pl.'s Br. in Support of Mot. to Remand Ex. 1).

late to any employee benefit *plan.*" 29 U.S.C. § 1144(a) (emphasis added). The Supreme Court has interpreted this provision broadly and has held that "[a] law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96–97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983).

Plaintiff and Defendants dispute whether the agreement at issue constitutes an "employee benefit plan," as defined by ERISA, or is simply a contract that provides employee benefits. If the Agreement is an employee benefit plan, then ERISA provides federal subject matter jurisdiction and Plaintiff's motion to remand must be denied. On the other hand, if the Agreement is simply a contract, this court has no jurisdiction over the action and Plaintiff's motion to remand should be granted.

ERISA contains a definition of "employee benefit plan," but this statutory definition provides little assistance in determining whether such a plan exists. *See Belanger v. Wyman–Gordon Co.,* 71 F.3d 451, 454 (1st Cir.1995) ("The text of ERISA itself affords scant guidance as to what constitutes a covered 'plan.'"). As a result, case law controls in deciding whether a plan exists.

In *Fort Halifax v. Coyne,* 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987), the Supreme Court established the test for analyzing whether an employee benefit plan exists. According to the *Fort Halifax* test, an employment contract or state statute establishes a plan if the benefits provided by their very nature require "an ongoing administrative program." Pursuant to this test, the *Fort Halifax* Court concluded that a Maine statute requiring employers to provide a one-time severance payment to employees who lost their jobs as a result of a plant closing did not implicate ERISA. The Court stated that:

> The Maine statute neither establishes, nor requires an employer to maintain, an employee benefit *plan.* The requirement of a one-time, lump-sum payment triggered by a single event requires no administrative scheme whatsoever to meet the employer's obligation. The employer assumes no responsibility to pay benefits on a regular basis, and thus faces no periodic demands on its assets that create a need for financial coordination and control. Rather, the employer's obligation is predicated on the occurrence of a single contingency that may never materialize. The employer may well *never* have to pay the severance benefits. To the extent that the obligation to do so arises, satisfaction of that duty involves only making a single set of payments to employees at the time the plant closes. To do little more than write a check hardly constitutes the operation of a benefit plan.

*Fort Halifax,* 482 U.S. at 12, 107 S.Ct. 2211.

█ The test established by the Supreme Court in *Fort Halifax* can be stated easily: an employee benefit plan exists if an arrangement between an employee and an employer requires an ongoing administrative program. Applying the test, however, proves far more difficult. As stated by the First Circuit, "So long as *Fort Halifax* prescribes a definition based on the extent and complexity of administrative obligations, line drawing ... is necessary and close calls will approach the line from both sides." *Simas v. Quaker Fabric Corp.,* 6 F.3d 849, 853–54 (1st Cir.1993); *see also Belanger,* 71 F.3d at 455 ("In this cloudy corner of the law, each case must be appraised on its own facts. All that can be stated with assurance is that *Fort Halifax* controls."). The Fourth Circuit has

had no occasion to apply the *Fort Halifax* test and therefore provides no controlling precedent on where it would draw the lines in determining what benefits require an ongoing administrative scheme.[2] Other courts, however, have been confronted with determining whether an ERISA plan exists and provide guidance in the present case.

Courts typically consider a variety of factors in determining whether employee benefits require an ongoing administrative scheme.[3] Two factors often considered that are most pertinent to the present case are (1) the amount of employer discretion granted under the severance agreement and (2) whether benefits are provided on a regularly occurring basis or on a single occasion.

The degree of employer discretion a severance agreement permits is perhaps the most significant factor in deciding whether a contract or statute providing benefits requires an ongoing administrative scheme. *See Champagne v. Revco D. S., Inc.*, 997 F.Supp. 220, 222 (D.R.I.1998)

("While all aspects of the plan must be considered, emphasis is to be given to the degree of discretion possessed by the employer in deciding employee eligibility."). The more discretion a severance agreement grants to an employer, the greater likelihood that the agreement requires an ongoing administrative scheme. The principal reason for this proposition is that employer discretion creates the opportunity for abuse. One of the motivating principles behind the enactment of ERISA was to minimize the potential for employer abuse in the administration of employee benefit plans. Therefore, the more discretion a state statute or contract providing severance benefits grants to an employer, the greater the need for ERISA's protective procedural framework.

Whether the discretion afforded to an employer requires an ongoing administrative scheme turns on the extent of that discretion. *See Fludgate v. Management Techs., Inc.*, 885 F.Supp. 645, 648 (S.D.N.Y.1995) ("The characterization of severance payments as governed by ERISA has hinged on the amount of em-

**2.** In *Biggers v. Wittek Indus., Inc.*, 4 F.3d 291 (4th Cir.1993), the Fourth Circuit found that an individual severance agreement constituted an ERISA plan but the court did not apply the *Fort Halifax* test. Therefore, although *Biggers* provides guidance by indicating that the Fourth Circuit will look at preemption broadly, it is not dispositive as to the present case.

**3.** In *Gilmore v. Silgan Plastics Corp.*, 917 F.Supp. 685 (E.D.Mo.1996), the court surveyed several cases from various jurisdictions and listed factors often considered in determining whether a severance agreement requires an "ongoing administrative scheme." According to *Gilmore*, these factors include: (1) whether the payments are one-time, lump sum payments or continuous, periodic payments; (2) whether the employer is obligated over a prolonged or a limited time period; (3) whether the severance payments are triggered by a single event, such as a plant closing, or rather are continuous

payments to be made generally to terminated employees; and (4) whether the severance 'plan' requires the employer to engage in a case-by-case review of employees to determine their particular eligibility based on applicable criteria. *Gilmore*, 917 F.Supp. at 688. The Second Circuit has also listed similar factors in determining the need for an ongoing administrative scheme. The Second Circuit factors include: (1) whether the employer's undertaking or obligation requires managerial discretion in its administration; (2) whether a reasonable employee would perceive an ongoing commitment by the employer to provide employee benefits; and (3) whether the employer was required to analyze the circumstances of each employee's termination separately in light of certain criteria. *See Tischmann v. ITT/Sheraton Corp.*, 145 F.3d 561, 566 (2d Cir.), *cert. denied*, 525 U.S. 963, 119 S.Ct. 406, 142 L.Ed.2d 329 (1998).

ployer discretion involved in providing payment."). In *Simas v. Quaker Fabric Corp. of Fall River*, 6 F.3d 849, 852 (1st Cir.1993), the First Circuit held that the discretion granted to employers by Massachusetts' "tin parachute" statute warranted ERISA preemption. The "tin parachute" statute provided for severance payments in the event an employee lost his job during a specified time period before or after a corporate takeover. The severance payments were available only if the employee was not fired "for cause." In finding that the statute constituted an ERISA plan, the court focused on the discretion granted to employers to make the "for cause" determination. Distinguishing the Massachusetts "tin parachute" statute from the Maine statute found not to constitute an ERISA plan in *Fort Halifax*, the court stated that "[t]he 'for cause' determination, in particular, is likely to provoke controversy and call for judgments based on information well beyond the employee's date of hiring and termination." *Simas*, 6 F.3d at 853. The "for cause" determination provided the essential element of employer discretion to bring the Massachusetts statute within the scope of ERISA's preemption provision. *Accord Darlin v. Consolidated Rail Corp.*, 93 F.Supp.2d 599 (E.D.Pa.2000) (finding ERISA plan where eligibility was restricted to employees who were terminated without cause); *Pane v. RCA Corp.*, 667 F.Supp. 168 (D.N.J.1987), *aff'd*, 868 F.2d 631 (3d Cir.1989) (finding a severance program to be an ERISA plan because it authorized the administrator to exercise discretion to decide whether an employee was terminated other than "for cause").

Courts have not always found the "for cause" determination alone enough to implicate ERISA, though. In *Delaye v. Agripac, Inc.*, 39 F.3d 235 (9th Cir.1994), the Ninth Circuit held that an employment contract providing severance benefits for up to two years if the employee was terminated without cause did not amount to an ERISA plan. Although the employer had discretion to make the "for cause" determination, the court found no ERISA preemption because the "contract [did] not implicate an ongoing administrative scheme." *Delaye*, 39 F.3d at 237. Once the employer decided whether the employee's termination was for cause, "there [was] nothing discretionary about the timing, amount or form of payment." *Id.* The "for cause" determination required only a single discretionary decision rather than a series of ongoing discretionary decisions. The court found this single instance of discretionary decision making insufficient to require preemption. Thus the discretion to determine employee eligibility through a "for cause" determination is a significant factor in analyzing ERISA preemption, but not always a dispositive one.

■ The discretion granted to Defendants in the present case involves two significant discretionary responsibilities. First, Defendants have authority to determine Plaintiff's eligibility for severance benefits through a "for cause" determination. In addition, the Agreement contains a non-compete covenant that extends for two years following Plaintiff's termination. Defendants will have to make continuous determinations during this two-year period as to whether Plaintiff is in violation of this non-compete covenant. The "for cause" determination combined with the non-compete component of the Agreement provide Defendants with sufficient discretion to implicate ERISA's concerns regarding the potential for employer abuse. Consequently, the discretionary factor weighs in favor of finding that the Agreement constitutes an ERISA plan.

Defendants also argue that the Agreement creates the need for an ongoing administrative scheme because it calls for two years of regular monthly payments and continued benefits if Plaintiff was terminated without cause. The "Voluntary Termination" section of the Agreement provides that Plaintiff "shall receive sixty percent (60%) of the salary paid on a monthly basis ... for the twenty four (24) month Term or until July 31, 2004, whichever constitutes the shorter time period." (Pl.'s Br. in Support of Mot. to Remand, Ex. 1 at 3). The Agreement also provides for a two-year continuation of health, life, and disability coverage.

In *Fort Halifax,* the Supreme Court relied heavily on the one-time, lump-sum nature of the payments required under the challenged statute to find no need for an ongoing administrative scheme. In discussing the one-time aspect of the payments, the Court stated, "The employer assumes no responsibility to pay benefits on a regular basis, and thus faces no periodic demands on its assets that create a need for financial coordination and control." *Fort Halifax,* 482 U.S. at 12, 107 S.Ct. 2211.

Concentrating on this facet of the *Fort Halifax* decision, the Seventh Circuit in *Cvelbar v. CBI Ill., Inc.,* 106 F.3d 1368 (1997), *abrogated on other grounds, International Un. of Operating Eng'rs, Local 150, AFL–CIO v. Rabine,* 161 F.3d 427 (7th Cir.1998), held that an agreement between an individual employee and his employer which called for three years of severance payments and benefits following termination required the existence of an ongoing administrative scheme and therefore constituted an employee benefit plan. *See Cvelbar,* 106 F.3d at 1374 ("The lump-sum nature of the Maine obligation weighed heavily in the Court's analysis because an ongoing administrative pro-

gram typically is required in instances in which there are 'ongoing benefits to be paid' and if there is a 'regularity of payment.'") (citations omitted). The court stated that "[a]lthough triggered by the single event of Mr. Cvelbar's termination, the benefits extended to Mr. Cvelbar are not similar to the 'one-time, lump-sum' payment considered in *Fort Halifax.*" *Cvelbar,* 106 F.3d at 1376. *Cvelbar* also found that the three years of continuous severance payments required under the agreement at issue forced the employer to "assume [ ] a 'responsibility to pay benefits on a regular basis' and face [ ] 'periodic demands on its assets that create a need for financial coordination and control.'" *Cvelbar,* 106 F.3d at 1376–77 (quoting *Fort Halifax,* 482 U.S. at 12, 107 S.Ct. 2211). Based on the lengthy time period the employer would have to provide severance benefits and on the discretion granted to the employer, the court found that the agreement created the need for an ongoing administrative scheme. As a result, the court characterized the agreement as an "employee benefit plan" governed by ERISA.

Other courts, however, have found that ERISA was not implicated even though the severance agreement at issue called for continuing benefits. For example, in *Angst v. Mack Trucks, Inc.,* 969 F.2d 1530 (3d Cir.1992), the court held that the provision of a one-time, lump-sum payment and a year of continuing benefits did not constitute an ERISA plan. In reaching this conclusion, the court noted that provision of the benefits required no *new* administrative scheme. *Id.* at 1540–41. Despite the language in *Fort Halifax* regarding the importance of the one-time nature of the severance payment at issue in that case, the court stated that its holding was consistent with *Fort Halifax:*

Because the buyout plan's provision of a year of continued benefits, like that plan's provision for a one-time lump-sum payment, did not require the creation of a new administrative scheme, and did not materially alter an existing administrative scheme, *Fort Halifax* instructs that the buyout plan did not implicate ERISA.

*Angst*, 969 F.2d at 1539. This conclusion has been reached by other courts as well. *See, e.g., Delaye*, 39 F.3d at 235 (not an ERISA plan even though employees would get fixed monthly amount and continuing insurance benefits); *Fontenot v. NL Indus., Inc.*, 953 F.2d 960 (5th Cir.1992) (severance plan that provided a three-year continuation of certain benefits and outplacement services did not implicate ERISA); *McLemore v. U.S. Fid. & Guar. Co.*, 829 F.Supp. 192 (S.D.Miss.1993) (ERISA not implicated by continuation of medical benefits because no new administrative scheme was required). Thus, despite the language in *Fort Halifax* focusing on the distinction between one-time payments and continuing payments, some courts have taken a different approach and examined whether continuing payments would require the creation of a *new* administrative scheme.

While most of the benefits provided under the Agreement executed by Plaintiff and Defendants would not require Defendants to establish any new administrative programs, the non-compete covenant creates the need for continuous monitoring of Plaintiff's activities over an extended time period and could require the establishment of a new administrative program. The Agreement requires Defendants to "pay medical premiums, process medical claims, pay medical benefits, and make a monthly payment for two years." (Defs.' Mem. of Law in Opp'n at 15). In addition, the Agreement requires Defendants to maintain disability insurance and life insurance

for Plaintiff for up to two years. (*See* Pl.'s Br. in Support of Mot. to Remand, Ex. 1 at Schedule 3.2 ¶ 1). Presumably Defendants have administrative programs already in place for the provision of all these benefits and their continuation would not require the creation of any new administrative programs. However, the Agreement also requires Plaintiff not to compete against Defendants for two years following the termination of his employment. Any violation of this non-compete provision would provide cause for Defendants to seek specific performance of the non-compete and require Plaintiff to pay Defendants any profits received as a result of the breach. (*See* Pl.'s Br. in Support of Mot. to Remand, Ex. 1 at ¶¶ 5.2.1 & 5.2.2). Therefore the Agreement creates the potential need for Defendants to establish an administrative program to monitor Plaintiff's compliance with the non-compete covenant and to determine whether Plaintiff has violated that covenant.

Thus, unlike the severance statute in *Fort Halifax*, which required only a single lump-sum payment, the Agreement at issue in the present case provides for extended severance benefits and creates the potential need to establish a new administrative program. As with the discretion granted to Defendants under the Agreement, the extended nature of the Defendants' responsibilities under the Agreement weighs in favor of finding ERISA preemption.

## CONCLUSION

The Agreement at issue grants Defendants discretion to determine Plaintiff's eligibility for severance benefits and Plaintiff's compliance with the non-compete covenant. It also requires ongoing administration and creates the potential need for a new administrative program to monitor

Plaintiff's professional activities for up to two years following his termination. As a result, the Agreement implicates ERISA's preemption provision, and Plaintiff's motion to remand will be denied. In light of this result, Plaintiff's motion for attorney's fees will also be denied. Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) will be denied; Plaintiff will be given twenty (20) days to amend his complaint to seek severance benefits under ERISA.

An order in accordance with this memorandum opinion shall be entered contemporaneously herewith.

For the reasons set forth in the memorandum opinion filed contemporaneously herewith,

### ORDER

IT IS ORDERED that Plaintiff's motions to remand and for attorney's fees [Doc. # 6] are **DENIED.**

IT IS FURTHER ORDERED that Defendants' motion to dismiss [Doc. # 2] pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, is **DENIED.**

IT IS FURTHER ORDERED that any amendment to Plaintiff's complaint shall be **FILED** within twenty (20) days of this order.

IT IS FURTHER ORDERED that Plaintiff's motion to stay [Doc. # 8] is **DENIED** as moot.