**Stacey and Susan SCHACTER, As Representatives of All Persons Similarly Situated, Plaintiffs,**

v.

**CIRCUIT CITY STORES, INC., Defendant.**

Civil Action No. 05–12456–NMG.

United States District Court, D. Massachusetts.

May 3, 2006.

---

Alan J. Statman, Jeffrey P. Harris, Statman, Harris, Siegel & Eyrich, LLC, Cincinatti, OH, John P. Zavez, Adkins, Kelston and Zavez, P.C., Boston, MA, for Plaintiffs.

Beth I.Z. Boland, Calvin W. Fowler, Turner A. Broughton, Thomas Peter R. Pound, Bingham McCutchen LLP, Boston, MA, for Defendant.

## MEMORANDUM & ORDER

GORTON, District Judge.

This is a putative class action lawsuit arising from allegations by the named plaintiffs, Stacey and Susan Schacter ("the Schacters"), that the defendant, Circuit City Stores, Inc. ("Circuit City"), is liable to them and others similarly situated for breach of contract, promissory estoppel, unjust enrichment, conversion and violation of the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A (hereinafter, "Chapter 93A"). Plaintiffs claim that Circuit City prematurely terminated product warranties purchased by them and thousands of other customers. The Schacters assert that the allegations of their class action complaint support two subclasses, a nationwide class certifiable under Fed.R.Civ.P. 23 (encompassing all

claims) and a Massachusetts class certifiable under Chapter 93A, § 9 (relating only to the Chapter 93A claim). Presently before the Court is Circuit City's motion to dismiss all of the claims against it, with respect to which the Court heard oral argument on April 28, 2006.[1] After consideration of the parties' positions in support of and opposition to the motion to dismiss, the Court will deny the motion.

## I. *Background*

The facts are straightforward and recited, as is required, in a light most favorable to the plaintiffs. The Schacters bought a telephone and an additional, two-year warranty plan from Circuit City and received, at the time of that purchase, a sales receipt ("Receipt") and warranty pamphlet ("Warranty Pamphlet").

In a paragraph below the purchase price, the Receipt states that the Cityadvantage Protection Plan for Small/Portable Electronics purchased by plaintiffs (hereinafter, "the Warranty Plan")

> starts 04/24/04 and expires 04/24/06. For fast replacement, log on to www.cityadvantage.com or call 1–800–871–2781. Refer to the Comprehensive Service Guide for Information and Terms and Conditions.

The next paragraph states "This sales receipt and the accompanying terms and conditions constitute your Cityadvantage Protection Plan". Elsewhere, the Receipt informs the purchaser that Circuit City will refund the purchase price "within 30 days of the sale date", barring the applicability of certain exceptions which are not pertinent here.

1. Circuit City has also filed related motions 1) to Strike Portions of Plaintiffs' Opposition to Defendant's Motion to Dismiss and 2) for Leave to File a Reply Memorandum to which the Reply Memorandum was attached. The Court will deny defendant's Motion to Strike but allow its Motion for Leave to File a Reply, which, in fact, the Court has considered.

The Warranty Pamphlet received by plaintiffs is a brief, glossy document describing key components of the plan and how to request service under it. At the bottom of what appears to be the second page, in small print, is the statement:

> See the applicable Cityadvantage Protection Plan Comprehensive Service Guide for complete terms and conditions or ask a store associate for assistance.

At the bottom of the page describing plaintiffs' plan, again in small print, is the statement:

> The Cityadvantage Protection Plan ... starts on the date of purchase and extends for the life of the plan. The plan term is inclusive of the manufacturer's warranty and store return policy.

A "money-back guarantee" is described twice in the pamphlet. In large print on the second page, Circuit City announces its "commitment to your complete satisfaction or a full and easy refund within 30 days of purchase". On the final page of the Warranty Pamphlet is the statement:

> If for any reason, you are not completely satisfied with the Cityadvantage Protection Plan, you may cancel at any time for a refund (less any service fees paid, administrative fees, and proration that applies).

Plaintiffs neither requested nor received a copy of the Comprehensive Service Guide ("Service Guide") when they purchased the Warranty Plan. They did not have actual knowledge, therefore, that under the terms set forth on page 43 of the Service Guide, coverage under the Warranty Plan would expire

> two (2) years from the commencement date of the Plan, or [once] a claim has been satisfied under the Plan, whichever occurs first. (emphasis added)

A cancellation provision on pages 46–47 of the Service Guide provides that cancel-lations by the purchaser or Circuit City after the first 30 days will result in a "pro-rata refund" reduced by, among other things, any amount paid in claims.

When the phone purchased by plaintiffs malfunctioned, they returned it pursuant to the Warranty Plan and were reimbursed with a gift card in the amount of the purchase price of the telephone, including taxes, which plaintiffs were permitted to use to purchase the same item (assuming its availability at the same price) or something else. When they inquired about the credit for the unused time remaining on their Warranty Plan, they were informed that reimbursement or replacement under that plan would cause its termination.

## II. Analysis

### A. Legal Standard

A court may not dismiss a complaint for failure to state a claim under Fed.R.Civ.P. 12(b)(6) "unless it appears, beyond doubt, that the [p]laintiff can prove no set of facts in support of his claim which would entitle him to relief". Judge v. City of Lowell, 160 F.3d 67, 72 (1st Cir.1998) (quoting Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In considering the merits of a motion to dismiss, a court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken. Nollet v. Justices of the Trial Court of Mass., 83 F.Supp.2d 204, 208 (D.Mass.2000) aff'd, 248 F.3d 1127 (1st Cir.2000). Although a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor, Langadinos v. Am. Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000), it need not credit bald assertions or unsupportable conclusions, Banco Santander de Puerto Rico v. Lopez–Stubbe (In re

*Colonial Mortgage Bankers Corp.*), 324 F.3d 12, 15 (1st Cir.2003).

### B. *Analysis*

Circuit City contends that the claims against it should be dismissed on the grounds that 1) the terms of the Service Guide were incorporated by reference into plaintiffs' Warranty Plan, 2) plaintiffs received precisely what they contracted for and, therefore, 3) plaintiffs lack any viable claims for breach of contract, promissory estoppel, unjust enrichment, conversion, or violation of the Massachusetts Consumer Protection Act. In support of its position that an enforceable contract exists where terms are incorporated by reference and not made available to the purchaser until after the sale (i.e., "money now, terms later"), defendant cites several cases involving the enforceability of "shrinkwrap" or "clickwrap" computer software license agreements and a case involving the purchase of cellular phone service.

The Schacters respond that their claims should survive dismissal at this juncture because 1) the terms of the Service Guide were not incorporated into the Warranty Plan they purchased, 2) the terms set forth in the Service Guide constitute an attempt of defendant to alter plaintiffs' contract unilaterally and 3) ambiguities exist between the terms set forth in the Receipt and those set forth in the Service Guide. They argue that pertinent provisions of the Uniform Commercial Code and general contract principles, including the enforcement of the more specific over the less specific and the interpretation of ambiguities against the drafter, support their position. They also contend that the cases relied upon by defendant are distinguishable.

■ In order for terms to be incorporated into a contract by reference, "the document to be incorporated [must] be referred to and described in the contract so that the referenced document may be identified beyond doubt". *Lowney v. Genrad, Inc.*, 925 F.Supp. 40, 47 (D.Mass.1995) (quoting *Am. Dredging Co. v. Plaza Petroleum*, 799 F.Supp. 1335, 1338 (E.D.N.Y. 1992)) (internal quotation marks omitted). *See also Chicopee Concrete Serv., Inc. v. Hart Eng'g Co.*, 398 Mass. 476, 498 N.E.2d 121, 122 (1986) ("Unless incorporation by general reference is explicitly rejected by some statute or regulation, incorporation by a clearly stated general reference will suffice.").

Courts have held that "money now, terms later" contracts are enforceable where 1) reference to the binding terms is explicitly made and 2) the purchaser has a clear opportunity to consult those terms and return the product for a refund if he or she is dissatisfied with the conditions of sale. *See, e.g., Hill v. Gateway 2000, Inc.*, 105 F.3d 1147 (7th Cir.1997), *cert. denied*, 522 U.S. 808, 118 S.Ct. 47, 139 L.Ed.2d 13 (1997); *I.Lan Sys., Inc. v. Netscout Serv. Level Corp.*, 183 F.Supp.2d 328 (D.Mass. 2002); *1–A Equip. Co., Inc. v. ICode, Inc.*, 2000 WL 33281687, No. 0057CV467 (Mass. Dist. Nov. 17, 2000).

In the *I.Lan Systems* case, United States District Judge William G. Young concluded that a software license agreement was enforceable where its purchaser was unable to use the product until an "I AGREE" button was clicked thereby indicating that the purchaser had read the terms of the license agreement. Those terms were physically included with the software and were prefaced by the "IMPORTANT" declaration that by clicking the "I AGREE" button, the purchaser

ACKNOWLEDGES THAT IT HAS READ ALL OF THE TERMS AND CONDITIONS OF THIS AGREEMENT, UNDERSTANDS THEM, AND AGREES TO BE BOUND BY

THEM. IF LICENSEE DOES NOT AGREE TO THESE TERMS AND CONDITIONS, IT MUST PROMPTLY CEASE USE OF THE LICENSED PRODUCT AND RETURN THE LICENSED PRODUCT ... FOR A FULL REFUND.

183 F.Supp.2d at 335 n. 3. Similarly, the external packaging of computer software at issue in the *1–A Equipment* case stated:

IMPORTANT—READ CAREFULLY BEFORE OPENING THIS PACKAGING OR DOWNLOAD [sic] OR INSTALLING OR USING ANY PART OF THIS PRODUCT.... *IF YOU DO NOT AGREE TO THESE TERMS, DO NOT OPEN THE PACKAGING OR DOWNLOAD OR INSTALL OR USE THIS PRODUCT.* WITHIN SEVEN (7) DAYS OF YOUR PURCHASE, RETURN THIS PRODUCT ... FOR A FULL REFUND.

2000 WL 33281687, at *1. The Massachusetts District Court noted in the *1–A Equipment* case that, in addition to the explicit "caveat emptor" set forth outside of the software packaging, the customer was required to accept the terms a second time before being able to complete installation of the product. *Id.* at *2.

■ Plaintiffs have made credible arguments that 1) reference to the Service Guide at the time of purchase was insufficiently explicit to constitute incorporation of additional terms and 2) ambiguities in purported terms and conditions of the Warranty Plan could, when all inferences are indulged in plaintiffs' favor, sustain a finding against the defendant. In the software license cases upon which defendant partly relies, notice of additional terms was conspicuous, the additional terms were physically included with the purchased product and the purchaser was obliged to assent affirmatively to having read and agreed to those terms in order to use the product. Those cases are less subtle than the facts of this case.

Defendant is correct that a United States district court found a "money now, terms later" contract for cellular phone service enforceable in *Schafer v. AT & T Wireless Services, Inc.,* No. Civ. 04–4149–JLF, 2005 WL 850459 (S.D.Ill. April 1, 2005), despite the contention of the plaintiff in that case that she had never received the "Complete Terms and Conditions" which were supposed to be enclosed with the phone she purchased. That case is distinguishable from this one in at least two respects, however. First, the court in *Schafer* found the plaintiff's claim that she had not received the full terms and conditions to be "somewhat disingenuous". *Id.* at *4. Second, the packaging of the phone she purchased stated not only that the "Complete Terms and Conditions" were enclosed within but also that "[t]he use of the service indicates your acceptance of the Terms and Conditions". *Id.* at *1.

■ In addition to their common law claims, the Court also concludes that plaintiffs have stated a marginal claim that Circuit City committed an "unfair or deceptive act[ ] or practice[ ]" prohibited by Section 2 of the Massachusetts Consumer Protection Act. By regulation of the state Attorney General, it is a violation of that Section if any entity subject to Chapter 93A, among other things,

fails to disclose to a buyer or prospective buyer any fact, the disclosure of which may have influenced the buyer or prospective buyer not to enter into the transaction; or ... fails to comply with existing ... regulations ... promulgated by the Commonwealth ... to provide the consumers of this Commonwealth protection.

940 Mass.Code Regs. 3.16. The Massachusetts Supreme Judicial Court recently

elaborated upon the nature of "deception" under Chapter 93A in *Aspinall v. Philip Morris Companies, Inc.*, 442 Mass. 381, 813 N.E.2d 476, 486–87 (2004) (citations omitted), in which it stated that

> [a] successful [Chapter 93A] action based on deceptive acts or practices does not require proof that a plaintiff relied on the representation, or that the defendant intended to deceive the plaintiff, or even knowledge on the part of the defendant that the representation was false.... [A] practice is deceptive ... if it could reasonably be found to have caused a person to act differently from the way he [or she] otherwise would have acted.

Under Massachusetts law, the allegations of plaintiffs state a Chapter 93A claim.

## ORDER

In accordance with the foregoing, Defendant's Motion for Leave to File a Reply Memorandum (Docket No. 18) is **ALLOWED** but its Motion to Strike Portions of Plaintiffs' Opposition (Docket No. 17) and its Motion to Dismiss (Docket No. 11) are **DENIED.**

So ordered.